**Opinion filed February 14, 2013**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-11-00047-CR & 11-11-00048-CR

_____

## DWAYNE DALE BILLINGS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause Nos. B-34,076 & B-34,077**

### O P I N I O N

The jury convicted Appellant, Dwayne Dale Billings, of the offense of aggravated kidnapping (Cause No. 11-11-00048-CR) and of three counts of aggravated sexual assault of a child (Cause No. 11-11-00047-CR). The jury assessed Appellant's punishment for each offense at confinement for life, and the trial court ordered the sentences to run concurrently. We affirm.

Appellant presents seven issues in each appeal. In the first issue, Appellant challenges the sufficiency of the evidence. In the second and third issues, Appellant complains of the admission of hearsay into evidence. Appellant complains in his fourth issue of the admission into evidence of a partial television interview because the full version of the interview had been destroyed. In the fifth issue, Appellant argues that the trial court abused its discretion in refusing

to transfer venue. In his sixth issue, Appellant contends that the jury erred in failing to find him not guilty by reason of insanity. And in his final issue, Appellant contends that his convictions violate the Double Jeopardy Clause. U.S. CONST. amend. V.

*Sufficiency of the Evidence*

In his first issue in each case, Appellant challenges the sufficiency of the evidence to support his convictions. We review a sufficiency challenge under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In his sixth issue, Appellant challenges the jury's rejection of his insanity defense. When the State has proven every element of the offense beyond a reasonable doubt, a defendant is nonetheless excused from criminal responsibility if he has proven, by a preponderance of the evidence, the affirmative defense of insanity. *Ruffin v. State*, 270 S.W.3d 586, 591–92 (Tex. Crim. App. 2008); *see* TEX. PENAL CODE ANN. § 8.01 (West 2011). The test for determining insanity is whether, at the time of the offense, the defendant, "as a result of a severe mental disease or defect, did not know that his conduct was wrong." Section 8.01(a). For purposes of the insanity defense, "wrong" means "illegal." *Ruffin*, 270 S.W.3d at 592; *Bigby v. State*, 892 S.W.2d 864, 878 (Tex. Crim. App. 1994). The *Ruffin* court stated the question for deciding insanity as follows: "Does the defendant factually know that society considers this conduct against the law, even though the defendant, due to his mental disease or defect, may think that the conduct is morally justified?" 270 S.W.3d at 592. On appeal, the proper standard for review is whether, after considering all of the evidence relevant to Appellant's affirmative defense of insanity, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Bigby*, 892 S.W.2d at 875; *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990); *Kile v. State*, No. 11-09-00361-CR, 2012 WL 5617860, at *1 (Tex. App.—Eastland Nov. 17, 2011, pet. ref'd) (mem. op., not designated for publication).

The jury found that Appellant committed the following offenses: contacting the anus of D.B., a child under the age of fourteen, with Appellant's sexual organ; contacting D.B.'s sexual organ with Appellant's sexual organ; contacting D.B.'s sexual organ with Appellant's mouth; and abducting D.B., by restraining her by moving her from one place to another, with the intent to prevent her liberation by secreting her in a place where she was not likely to be found and with the intent to inflict bodily injury on her and violate and abuse her sexually. *See* TEX. PENAL CODE ANN. § 20.04(a)(4) (West 2011), § 22.021(a) (West Supp. 2012). Appellant specifically argues that the "properly admitted" evidence is insufficient to show contact with D.B.'s "anus" and is insufficient as to the other two counts of sexual assault in light of D.B.'s lack of credibility.

As for Appellant's specific arguments, we note first that we must consider all evidence, even improperly admitted evidence, when conducting a sufficiency analysis. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We also note that credibility is an issue for the jury to determine. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, a jury is free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

The record in this case shows that D.B. was nine years old at the time of the offense and that, due to an autism-related seizure disorder, D.B. regularly ran from her caregivers. D.B.'s grandmother had obtained a monitor to put on D.B.'s ankle or wrist so that she could be located when she ran. On January 4, 2007, D.B.'s grandmother left D.B., D.B.'s twelve-year-old uncle, a baby, and the babysitter in the car. D.B. got upset and scared because her uncle was hitting her and then hit the baby, so she got out of the car and ran, leaving her ankle monitor in the car. D.B.'s family, the police, and numerous volunteers searched for D.B. but could not find her. An Amber Alert was issued.

D.B. was thirteen years old at the time of trial and had been diagnosed with thirty-two disorders, including a form of autism called Asperger's, bipolar, manic depressive, obsessive compulsive, and extreme ADHD. After the abduction, D.B. became psychotic, was hospitalized, and was then sent to live in a residential treatment center. D.B.'s grandmother agreed with Appellant's attorney that D.B. does not always tell the truth.

3

At trial, D.B. testified that, when she ran from the car that day, she wound up hiding in a bush. After hiding in the bush for a while, D.B. saw Appellant riding his bicycle. Appellant saw D.B., went over to the bush, and talked to D.B. Appellant told D.B. that his name was "Punk Rock" and that he was twenty-one years old. D.B. asked Appellant if he could take her to her "mommy," which is what she called her grandmother. Appellant said he would. According to D.B., Appellant wrapped the "bike chain lock" around her arm and connected it to the bike. When they passed by the building where her grandmother worked, D.B. tried to go over there. D.B. testified: "[B]ut then when I jerked, the bike almost fell, and then he hit me."

Appellant took D.B. to the trailer house where Appellant and his grandfather lived. Appellant noticed that his grandfather was awake, so he lifted D.B. up and put her through the window into Appellant's room. Appellant's grandfather, who was in a wheelchair, came into the room and told D.B. to come into the living room. D.B. fell asleep on the couch. When she woke up, she was in Appellant's bed, and her arms and legs were tied with wire. D.B. testified that Appellant "put his thing in my thing." D.B. explained that Appellant's "thing" was his private part down by the leg area in the middle and that her "thing" was her private spot between her legs. D.B. testified that Appellant also "licked" her private spot. Appellant's grandfather woke up, came down the hall, saw what was happening, "pulled him out," and chastised him for doing something that he knew was wrong. D.B.'s grandmother received a call concerning D.B.'s whereabouts, and she notified the police.

Officer Jamie Brown called a number obtained from caller ID and spoke to a man identifying himself as James Billings, Appellant's grandfather. The officer learned that D.B. was with Appellant's grandfather, and he asked to speak to D.B. D.B. came to the phone, and Officer Brown told her to go in the restroom for her safety. D.B. testified that she ran into the bathroom with the phone and locked the door and that Appellant banged on the door and told her to let him in. According to D.B., Appellant also said, "[I]f you tell anybody about this, I will kill you." Officer Brown could hear a male voice in the background saying, "Tell him that you slept on the f-----g couch." The sheriff and other officers arrived at the trailer house within minutes. When the officers entered the residence, they talked to an elderly man in a wheelchair,[1] located D.B. down the hallway, and discovered Appellant hiding in his closet.

---

[1]Appellant's grandfather had only one leg; his other leg had been amputated. He died a few months prior to Appellant's trial.

D.B. was taken to the hospital for an exam. At the hospital, D.B. talked to two nurses: a triage nurse and a sexual assault nurse examiner. D.B. was scared and complained of pain in her private area. The triage nurse testified at trial that D.B. complained of the pain and told the nurse that the boy who took her to his house "licked me there"—pointing to her private area. D.B. told the triage nurse that she hit the boy but that the boy would not stop and that he made her sleep with him. D.B. reported that the boy's dad was asleep and would not wake up. The triage nurse testified that D.B. had a black belt on; it was strapped between D.B.'s legs and tied in back. D.B. told the triage nurse that the belt belonged to the boy.

The sexual assault nurse examiner observed redness on D.B.'s labia majora, labia minora, and perineum and redness encompassing her anus. She also observed multiple scratches and blue bruises. D.B. told the sexual assault nurse examiner that the boy covered her mouth with duct tape, tied her arms above her head, tied her legs with colorful wire, kissed her, and licked her "down there"—pointing to her female sexual organ. The boy told D.B. that he was going to put sperm in her, and he stuck his penis "in there" and also "rubbed it on [her] butt." D.B. also told the sexual assault nurse examiner about two tattoos that were on the boy: his girlfriend's name on his arm and his last name on his back. Officers subsequently confirmed that Appellant had "Jenny" tattooed on his arm and "Billings" tattooed on his back. Pictures of these tattoos were admitted into evidence.

A forensic scientist analyzed Appellant's and D.B.'s DNA and found DNA consistent with Appellant's DNA on a thermal shirt that belonged to D.B. and was found by police on the floor in Appellant's residence. No DNA foreign to D.B. was detected on the vaginal swabs that were submitted for analysis.

During an interview with a television reporter, Appellant admitted that he put his penis in D.B.'s vagina. Appellant said that he thought what he did was wrong. Appellant also admitted to a newspaper reporter that he had sex with D.B. During his interview with Sergeant David Trujillo of the Ector County Sheriff's Office, Appellant gave varying versions of the events surrounding the charged offenses—running the gamut from denying that he ever saw D.B. to wanting to press charges against D.B. for sexually assaulting him.

At trial, Appellant testified that he was on his way home when D.B. came running up to him; he thought she was in danger. D.B. followed him, and Appellant told her to go home. Appellant said that he rode to the 7-Eleven store at 10th and Grant to call "somebody" "[i]n the

5

phone book" to get help but that the store clerk would not let him use the phone and D.B. would not go inside. They went to Appellant's house, and D.B. entered through a window because Appellant did not want his grandfather to see D.B. Appellant testified that his grandfather found D.B. and made her sleep with him. Appellant, who claimed that he had been molested by his grandfather, was concerned for D.B. After his grandfather fell asleep, Appellant went to check on D.B. Appellant said that she wanted to get away from his grandfather and that she followed Appellant to his room. At trial, Appellant denied having any sexual contact with D.B. and said that he lied during his interviews when he said that he did. Appellant denied having any intent to harm D.B. when he brought her to his house. However, Appellant also admitted that he hid in his closet because he knew what he had done to D.B. was wrong.

Appellant was impeached with a prior conviction for failing to register as a sex offender. The registration requirements stemmed from his touching of a four-year-old girl. Appellant testified that touching a girl in that manner is wrong and that he knew it was wrong when he was thirteen, knew it was wrong in January 2007, and still knew it was wrong at the time of his testimony in this case.

After his arrest in this case, Appellant was diagnosed by John Richard Howlett Jr., M.D., a psychiatrist, as being mentally retarded. Appellant's level of mental retardation was borderline, not severe. Dr. Howlett opined that Appellant was not sane at the time of the offense. Dr. Howlett testified, however, that he did not think Appellant's diminished mental capacity was so severe that Appellant did not know what he was doing was wrong. In fact, Dr. Howlett testified that he thought Appellant may have known what he was doing was wrong.

Appellant was also examined by Dr. Stacey Shipley, a psychologist. Dr. Shipley testified that, based on Appellant's IQ of 77, he was borderline intellectual functioning, not borderline mentally retarded as suggested by Dr. Howlett. Dr. Shipley agreed that Appellant had a variety of mental disorders, but she found nothing to suggest that, at the time of the offense, Appellant "was suffering from a severe mental disease or defect that significantly impacted his ability to understand the wrongfulness of his behavior or to think rationally." Her opinion was based in part on a number of statements made by Appellant about the events surrounding the offense that indicated Appellant went to great lengths to avoid detection by the police while on his way home with D.B. and to avoid detection by his grandfather after he arrived home with D.B. Dr. Shipley testified that, based upon Appellant's actions at the time of the offense and upon his subsequent

6

statements, it is clear that Appellant had "a legal understanding of the wrongfulness of his conduct." When talking to Dr. Shipley, Appellant admitted to the sexual behavior but attempted to shift the blame to D.B., which also indicated to Dr. Shipley that Appellant understood his behavior was wrong. Dr. Shipley opined that Appellant was sane at the time of the offense.

We hold that the evidence is sufficient to show beyond a reasonable doubt that Appellant committed all of the charged offenses. The evidence shows that D.B. was a child under the age of fourteen. The evidence indicates that Appellant rubbed his penis on D.B.'s "butt" and that the area encompassing D.B.'s anus was red. Contrary to Appellant's assertion, this evidence is sufficient to show contact by Appellant's sexual organ with D.B.'s anus, not merely her buttocks. *See Mallet v. State*, 9 S.W.3d 856, 863–64 (Tex. App.—Fort Worth 2000, no pet.) (evidence sufficient to support verdict even though child did not testify or demonstrate that "butt" referred to anus rather than buttocks). Next, in addition to D.B.'s testimony and that of the nurses regarding Appellant's sexual organ contacting D.B.'s sexual organ, the record contains an admission made by Appellant to a reporter in which Appellant admitted putting his penis into D.B.'s vagina. Thus, the evidence is sufficient to show that Appellant's sexual organ contacted D.B.'s sexual organ. D.B.'s statement that Appellant "licked" her "down there"—in conjunction with evidence indicating that D.B. was referring to her female sexual organ—is sufficient to show that Appellant's mouth contacted D.B.'s sexual organ. With respect to the aggravated kidnapping charge, the evidence is sufficient to show beyond a reasonable doubt that Appellant abducted D.B., by restraining her by moving her from one place to another, with the intent to prevent her liberation by secreting her in a place where she was not likely to be found and with the intent to inflict bodily injury on her or violate and abuse her sexually. Based on the evidence presented in this case, a rational trier of fact could have found each of the elements of each charged offense beyond a reasonable doubt. Furthermore, with respect to the affirmative defense of insanity, we hold that the verdicts are not so against the great weight and preponderance of the evidence as to be manifestly unjust; there is ample evidence that Appellant knew at the time he committed the offenses that what he was doing was wrong. Appellant's first and sixth issues are overruled.

### *Hearsay*

In his second issue, Appellant argues that the trial court abused its discretion in admitting into evidence a "television news clip" that contained hearsay. In his third issue, Appellant

7

contends that the trial court abused its discretion in permitting an officer to give hearsay testimony regarding the specific details of a telephone conversation. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard, and we will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

State's Exhibit No. 18, a DVD showing an excerpt from a news broadcast that aired on television, was admitted into evidence over Appellant's objection. This exhibit shows a reporter, Eddie Garcia, talking about his interview of Appellant at the jail after Appellant had been arrested for the offenses at issue in this case. This exhibit constitutes blatant hearsay as it is merely a recording of the declarant's (here, Garcia's) out-of-court statements. *See* TEX. R. EVID. 801. The State asserts that the exhibit was admissible as an admission of a party opponent under Rule 801(e)(2). While we agree that Garcia could have testified in open court regarding an out-of-court statement made by Appellant, Garcia's previously recorded out-of-court statement was not admissible. Moreover, we note that the news excerpt did not merely contain Appellant's purported admissions. We hold that the trial court abused its discretion in admitting the exhibit into evidence.

Under the record in this case, however, we cannot find that the error in admitting Exhibit No. 18 into evidence constitutes reversible error under TEX. R. APP. P. 44.2(b). Pursuant to Rule 44.2(b), an error is not reversible error unless it affects a substantial right of the defendant. A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). When conducting a Rule 44.2(b) harm analysis based upon the erroneous admission of evidence, an appellate court should consider everything in the record, including:

> [A]ny testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005). The exhibit did not contain any information that was not otherwise before the jury. Garcia testified at trial and was available for cross-examination. His testimony in open court was more damaging than the short news clip; he

8

testified that Appellant "told me that he put his penis in her vagina." Considering everything in the record, we cannot hold that Appellant's substantial rights were affected by the admission of television news clip. *See Rodriguez v. State*, 955 S.W.2d 171, 175–76 (Tex. App.—Amarillo 1997, no pet.). Appellant's second issue is overruled.

In his third issue, Appellant complains of the admission of hearsay during the testimony of Officer Jamie Brown. Officer Brown testified over a running objection about a telephone conversation he had that led to the discovery of D.B. at Appellant's residence. Officer Brown was permitted to give detailed information about this conversation. The officer testified that he dialed a phone number that had been given to him and that the person who answered the phone identified himself as "James Billings." During the conversation, the person who answered the phone told Officer Brown that D.B. was at his residence, and he gave the address to Officer Brown. Officer Brown then asked the man if he could speak to D.B. on the phone. Officer Brown talked to D.B. until other officers arrived at the residence. He testified that he told D.B. to go into the restroom. He asked D.B. if she was alright, and she said yes. He also asked her if anyone had done anything to her that they should not have done, and she said yes. According to Officer Brown, D.B. then "became scared, almost crying," and said, "[H]e is trying to get in the bathroom." Officer Brown could hear what he believed to be a male voice outside the door saying, "Open the door." The phone conversation ended when the sheriff took the phone and told Officer Brown that he had D.B. and that everything was okay.

At trial, the State explained that the telephone call was made in furtherance of the investigation and, as such, the conversation was not being offered for the truth of the matter asserted. The out-of-court statements made by Officer Brown to the person answering the phone and that person's statements were not offered to prove the truth of the matter asserted but, rather, to explain how the police found D.B. and how Appellant became a suspect. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). The trial court did not abuse its discretion in admitting these statements as non-hearsay. *See* Rule 801(d). With the exception of D.B.'s indication that somebody had done something bad to her, the remainder of the statements were admissible as exceptions to the hearsay rule. D.B.'s indication that she was okay was admissible pursuant to TEX. R. EVID. 803(3) as it was a statement of her then existing mental, emotional, or physical condition. The sheriff's indication that everything was okay constituted a present sense impression and was admissible under Rule 803(1). D.B.'s statement that "he is trying to get in

9

the bathroom" could have been admitted either as a present sense impression under Rule 803(1) or an excited utterance under Rule 803(2). Furthermore, the trial court did not abuse it discretion in allowing the officer to testify that he heard a male voice saying, "Open the door"; this statement could have been admitted either as an admission by a party opponent or as a statement merely showing what was said rather than proving the truth of the matter asserted. *See* Rule 801(e)(2); *Dinkins*, 894 S.W.2d at 347.

Although the trial court may have abused its discretion in permitting Officer Brown to testify that he asked D.B. if anyone had done anything to her that they should not have done and that she said yes, we cannot hold that the admission of these statements constitutes reversible error under Rule 44.2(b). After considering everything in the record in conducting a Rule 44.2(b) harm analysis as set out above, we conclude that the admission of this hearsay did not affect Appellant's substantial rights. *See Rich*, 160 S.W.3d at 577–78; *Johnson*, 43 S.W.3d at 4. No new information was conveyed to the jury by the inadmissible hearsay. D.B. testified at trial and was available for cross-examination. The hearsay, which was vague in nature, did not specifically refer to Appellant as having been the perpetrator of the bad thing that had happened and did not in any way detail a sexual offense. Other admissible evidence detailed the specifics of the offenses and identified Appellant as the person who committed these offenses. Appellant's third issue is overruled.

*Admission of Edited Interview*

In his fourth issue, Appellant contends that the trial court abused its discretion in admitting into evidence an edited version of his videotaped interview with Stephanie Miranda, as aired in a news broadcast, when the full version of that interview was not available because it had been destroyed by the television station where Miranda was employed. Miranda testified that the exhibit depicted an edited version of the original recording, that it had been edited or spliced due to broadcasting time constraints, and that the recording containing the entire interview had been destroyed in the ordinary course of business. The television station typically kept such recordings for two or three weeks before taping over them. Miranda testified, however, that the edited version was an "accurate representation" of the interview and "an accurate and correct depiction" of the original recording. Over Appellant's trial objection that a "recording edited from its original is not admissible in court," the trial court permitted a copy of the edited version to be admitted into evidence as an exhibit. When an original recording has

been destroyed, other evidence of its contents is admissible if the proponent of the evidence did not destroy the original in bad faith. TEX. R. EVID. 1004. Furthermore, an edited version of a recording may be admissible if it constitutes a fair and accurate representation of the original. *See Hall v. State*, 67 S.W.3d 870, 875–77 (Tex. Crim. App.), *vacated & remanded on other grounds*, 537 U.S. 802 (2002); *Thornton v. State*, 994 S.W.2d 845, 854–55 (Tex. App.—Fort Worth 1999, pet. ref'd). Nothing in the appellate record in this case indicates that the original recording was destroyed by the State, that it was destroyed in bad faith, or that its contents would have been favorable to Appellant. Accordingly, we hold that the trial court did not abuse its discretion in overruling the objection made by Appellant and admitting the edited version of the interview into evidence. Appellant's fourth issue is overruled.

*Venue*

In his fifth issue, Appellant argues that the pretrial publicity in this case was pervasive, prejudicial, and inflammatory and that the trial court abused its discretion in refusing to transfer venue. Section 31.03(a) of the Code of Criminal Procedure provides that a change of venue may be granted if the defendant establishes that "there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 31.03(a) (West 2006). To justify a change of venue based upon media attention, a defendant must show that the publicity was pervasive, prejudicial, and inflammatory. *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007). A trial court has discretion in ruling on a motion for change of venue, and we will not disturb the trial court's ruling absent an abuse of discretion. *Id.*

The record shows that Appellant filed a motion for change of venue that complied with Article 31.03 and that the State filed controverting affidavits. The trial court conducted a hearing, and evidence was introduced that indicated that the pretrial publicity near the time of the offense in January 2007 was relatively pervasive. At the end of the hearing, the trial court stated that it was aware of the publicity that attended this case "some years ago" and that Appellant's "point [was] extremely well taken." The trial court denied Appellant's request for transfer at that time, but carried the motion forward for reconsideration based upon the reaction of the potential jurors at voir dire.

Voir dire in Appellant's trial commenced in January 2011, four years after most of the publicity. When asked about pretrial media coverage, sixteen of the seventy potential jurors in

11

the voir dire panel affirmatively stated that they had already formed an opinion based upon what they had heard or read prior to voir dire. Appellant acknowledges that all sixteen were struck for "cause." However, fifty-four of the seventy veniremembers, or approximately 77%, either were unfamiliar with the pretrial media coverage or had not formed on opinion based on that coverage. Accordingly, we cannot hold that the trial court abused its discretion in denying Appellant's motion for change of venue; the record does not show that the prejudice from the pretrial publicity was so great that Appellant could not obtain a fair and impartial trial. *See Gonzalez*, 222 S.W.3d at 450. Furthermore, Appellant failed to show that the publicity in this case was prejudicial and inflammatory. *See id.* at 451–52. The fifth issue is overruled.

### *Double Jeopardy*

In his final issue, Appellant contends that, because the same evidence was used to prove the commission of the offense of aggravated kidnapping and the commission of the three counts of aggravated sexual assault, his convictions violated the Double Jeopardy Clause of the Fifth Amendment. U.S. CONST. amend. V. Appellant asserts that he received multiple convictions for the same offense because "the series of acts alleged and shown as the aggravated sexual abuse was the same conduct used to evidence [Appellant's] 'intent to inflict bodily injury on D.B. and violate and abuse D.B. sexually' in the aggravated kidnapping case." We disagree.

We note first that the State argues that Appellant has waived this issue by not presenting it to the trial court before the charge was submitted to the jury. Appellant acknowledges that he did not urge this contention at trial, but he asserts that he has not waived the issue because the undisputed facts showing the double jeopardy violation are clearly apparent on the face of the record. *See Gonzalez v. State*, 8 S.W.3d 640 (Tex. Crim. App. 2000). We will determine whether a double jeopardy violation is apparent on the face of the record.

To determine whether a defendant has received multiple convictions for the same offense, we must examine the elements of the applicable statutory provisions and determine whether each statute requires proof of an additional fact that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). The court in *Langs* applied the *Blockburger* test to a situation similar to that in the present case. The *Langs* court recognized that a defendant shall not be punished for both burglary and the underlying felony if the burglary allegation is that the defendant entered a home without the owner's consent and *then committed* the underlying felony; the court also

12

recognized, conversely, that a defendant may be punished for both burglary and the underlying felony if the burglary allegation is that the defendant entered a home without the owner's consent and with the *intent* to commit the underlying felony. 183 S.W.3d at 686.

In the present case, the allegation of aggravated kidnapping was that Appellant abducted D.B. with the *intent* to inflict bodily injury on her and violate and abuse her sexually. The allegation was not that Appellant abducted D.B. and *then committed* the sexual abuse. Abduction was an element of aggravated kidnapping; abduction was not an element of the aggravated sexual assaults. The actual commission of a sexual assault in the manner charged was an element of each aggravated sexual assault but was not an element of aggravated kidnapping. Thus, under the *Blockburger* analysis, distinct offenses were charged. Our sister court in *Gonzales v. State*, 270 S.W.3d 282 (Tex. App.—Amarillo 2008, pet. ref'd), reached the same conclusion. In that case, the court of appeals held that the offense of aggravated criminal kidnapping was "a distinct criminal offense from the actual commission of aggravated sexual assault" because, for each offense alleged, the State was required to prove an element that was not an element of the other alleged offense. 270 S.W.3d at 287.

Furthermore, contrary to Appellant's assertions, none of his convictions was for an offense that was a lesser included offense of any of the other offenses, and there is no clear legislative intent to punish these offenses as one offense. *See Langs*, 183 S.W.3d at 688. We hold that the record, on its face, does not show any double jeopardy violation. Appellant's seventh issue is overruled.

The judgments of the trial court are affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


February 14, 2013

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

13