Opinion filed July 19, 2018



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00332-CR
_____

**MARIO A. BARRERA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 32nd District Court**
**Fisher County, Texas**
**Trial Court Cause No. 3499**

## MEMORANDUM OPINION

The jury found Mario A. Barrera guilty of burglary of a habitation and assessed his punishment at confinement for three years. The trial court sentenced Appellant accordingly. On appeal, Appellant raises three issues. We affirm.

### I. *Background Facts*

David Noles hired Appellant to work on his mother's house. The house had been vacant for about a year. Noles testified that another family member had previously lived in the house and stored "junk" in it. Appellant contacted Noles and offered to clean up and maintain the yard.

When Appellant came to the house, he asked Noles for permission to take certain items. Noles agreed that Appellant could fix up an old golf cart, and he

allowed Appellant to take a coffee maker and some meat from the freezer. Noles testified that, other than those items, he did not give Appellant permission to take and sell anything else.

Noles testified that he kept the doors to the house locked. One day, however, Noles came in through the back door and discovered that someone had rummaged through the house. Noles contacted the sheriff's office, and Deputy Shane Baxter came to investigate.

Noles and Deputy Baxter went to the basement and saw that the door was broken and appeared to have been "kicked in." Noles testified that several items were missing. For some of those items, Deputy Baxter later brought Noles pawnshop tickets, which listed Appellant's name.

Appellant denied that he entered the house without Noles's permission, and he testified that he had permission to take the items that he sold to the pawnshop. Appellant admitted, however, that he had kicked down a door during another criminal offense. The jury found Appellant guilty of burglary of a habitation.

## II. *Analysis*

In his first issue, Appellant asserts that the trial court erred when it refused to grant his motion for change of venue. Second, Appellant contends that the State adduced insufficient evidence because the house did not qualify as a "habitation" under the statute. In his third issue, Appellant argues that he is entitled to a new trial because the State failed to turn over material evidence before trial. We address Appellant's second issue first, followed by his first and third issues.

A. <u>Issue Two</u>: *The State adduced sufficient evidence to establish that the vacant house was a "habitation" under Section 30.02 of the Texas Penal Code.*

In his second issue, Appellant contends that the evidence was legally insufficient to support a finding that the vacant home was a "habitation." Appellant

2

emphasizes the fact that the house was being used for storage at the time of the offense, rather than as a habitation.

### 1. *Standard of Review*

The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt of the charged offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ("[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case."). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### 2. *Sufficiency of Evidence for Offense of Burglary of a Habitation*

A person commits burglary of a habitation if the person enters a habitation without the owner's consent and commits a theft. TEX. PENAL CODE ANN. § 30.02(a)(3), (c)(2) (West Supp. 2017). "'Habitation' means a structure or vehicle that is adapted for the overnight accommodation of persons . . . ." *Id.* § 30.01(d). The determination of what constitutes a structure that has been adapted for overnight

3

accommodation "is a complex, subjective factual question fit for a jury's determination." *Blankenship v. State*, 780 S.W.2d 198, 209 (Tex. Crim. App. 1989) (op. on reh'g); *Parrick v. State*, No. 11-12-00161-CR, 2013 WL 5303754, at *2 (Tex. App.—Eastland Sept. 19, 2013, no pet.) (mem. op., not designated for publication). We consider relevant factors such as "whether someone was using the structure as a residence at the time of the burglary; whether the structure 'contained bedding, furniture, utilities, or other belongings common to a residential structure'; and whether the structure was of such character that it was likely intended to accommodate persons overnight." *Parrick*, 2013 WL 5303754, at *2 (quoting *Blankenship*, 780 S.W.2d at 209). We will overturn the jury's determination "only if no reasonable trier of fact could have found the structure to have been adapted for the overnight accommodation of persons beyond a reasonable doubt." *Id.*

In *Parrick*, the character of a vacant house indicated that it was intended for overnight accommodations. *See id.* The house had been vacant for one to two weeks, and it "contained scant furniture and no bedding, food, cooking utensils, or hygiene items." *Id.* However, the house had "a kitchen, living room, bathroom, and bedrooms." *Id.* "The house was wired for electricity and equipped for utility service," and "a property manager actively checked" its condition. *Id.* The court also noted that the owners "retained a possessory right to occupy the house and could have slept there overnight." *Id.* Although no one was currently living in the house, there was sufficient evidence it was a habitation because the character of the structure indicated that it was intended for overnight accommodation. *Id.*

In this case, like in *Parrick*, there was sufficient evidence that the vacant house was a habitation. Deputy Baxter testified that there were beds in the house and that it was almost fully furnished. Noles was preparing to sell the house. The house had electricity and running water. Noles replaced the locks on the doors, and he testified that he had slept in the house. Granted, the house had been vacant for about a year

4

and was being used for storage. However, given the testimony that various characteristics of the house indicated that it was intended for overnight accommodation, we cannot say that the jury was unreasonable in finding that the house was a habitation. We overrule Appellant's second issue.

### B. *Issue One: The trial court did not abuse its discretion when it denied Appellant's motion for change of venue.*

In his first issue, Appellant argues that the trial court erred when it denied his motion for change of venue because "enough of the citizens of Fisher County have a long-standing prejudice against him in all matters, precluding a fair trial no matter what the charge," and because there was a dangerous combination of influential persons against him.

#### 1. *Standard of Review*

We review a trial court's decision to deny a motion for change of venue for an abuse of discretion. *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007); *Billings v. State*, 399 S.W.3d 581, 591 (Tex. App.—Eastland 2013, no pet.). A trial court may grant a change of venue to a defendant if (1) "there exists in the county where the prosecution is commenced so great a prejudice against him" or (2) there is "a dangerous combination against him instigated by influential persons" that would prevent him from receiving a fair and impartial trial. TEX. CODE CRIM. PROC. ANN. art. 31.03(a) (West 2006).

#### 2. *First Statutory Basis: Great Prejudice*

To obtain a change of venue based on a great prejudice, the defendant "bears a heavy burden to prove the existence of such prejudice in the community, that the likelihood of obtaining a fair and impartial trial jury is doubtful." *Renteria v. State*, 206 S.W.3d 689, 709 (Tex. Crim. App. 2006). A court should change venue if "the outside influences affecting the community climate of opinion as to a defendant are inherently suspect." *Id.* We look to several factors to determine "whether outside

influences affecting the community climate of opinion as to a defendant are inherently suspect":

> (1) the nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire.

*Henley v. State*, 576 S.W.2d 66, 71–72 (Tex. Crim. App. 1978).

Before the hearing on Appellant's motion for change of venue, Appellant submitted affidavits from Fisher County residents—including himself, his mother, and two longtime acquaintances, Jaime Amador and Kayce King—who testified as to their belief that Appellant would not be able to have an impartial jury in that county. The affidavits made these basic points: Appellant's criminal charges were the "talk of the town," and the rumor was that Appellant was guilty. Local newspapers referenced Appellant's charges. And well-known witnesses were expected to testify against Appellant at trial.

The State filed a controverting affidavit from Deputy Baxter. Deputy Baxter stated that he personally knew King, Appellant, and Appellant's mother, and Deputy Baxter did not believe that they were credible witnesses. Deputy Baxter also stated that he "ha[d] not heard anything from Fisher County residents suggesting that [Appellant] could not receive a fair and impartial trial in Fisher County, Texas."

At the hearing on the motion for change of venue, Appellant and four other witnesses testified that they believed Appellant could not receive a fair trial in Fisher County. Appellant said that his children's friends told them that their parents said things like, "I heard your daddy's nothing but a thief." Appellant testified that some of the State's potential witnesses were influential members in the community,

6

including former city employees and the city manager. Appellant also believed that Deputy Baxter had influence over the judicial proceedings in Fisher County.

Appellant also testified that people in the community expressed a negative demeanor toward him in public places. Appellant admitted on cross-examination that he had been accused of theft and that he had been arrested in the past. Additionally, Appellant admitted that he previously had been convicted of assault causing bodily injury to a family member and that he had been arrested for theft of property.

Three of Appellant's other witnesses—Penny Kizer, Cathy Spencer, and Brian Dickson—testified that rumors about Appellant might affect his opportunity to receive a fair trial in Fisher County. Additionally, Spencer testified that certain people in the community had been "spearheading that campaign" against Appellant. However, each of these three witnesses admitted that they were biased in favor of Appellant.

Appellant's fourth witness, Patricia Hurt, testified that she had known Appellant for a long time but that she believed she could be fair and impartial concerning his case. Hurt was the owner of the local newspaper. Hurt testified that the local newspaper published only facts and nothing inflammatory. Indeed, the newspaper articles that were admitted into evidence merely reported that Appellant had been indicted and arrested for the alleged offense. However, Hurt testified that social media comments that occurred three years prior to the hearing had damaged Appellant's reputation. Because of that social media attention, Hurt believed that it would be difficult for Appellant to receive a fair trial in Fisher County.

Deputy Baxter also testified at the hearing. He confirmed that there were local meetings about preventing crime in general and that there were discussions about Appellant, in particular, being involved with thefts. Deputy Baxter knew Appellant and had investigated Appellant in past criminal matters. However, Deputy Baxter

7

testified that he did not "have anything personal against [Appellant]" and that he did not attend any of the local meetings about crime in Fisher County. At the time of the hearing, Deputy Baxter was involved in a write-in campaign to become the county sheriff. When asked whether he could influence a judicial proceeding in Fisher County, Deputy Baxter said, "I don't want people to think that I could influence one way or the other actually. And to be truthful, I don't know if I could influence it or not." Deputy Baxter testified that he believed that Appellant could receive a fair and impartial trial.

After hearing the testimony and considering the affidavits, the trial court stated, "[I]t sounds like there's a general reputation issue more than the fear of anything for this offense, that this particular offense that is charged. Much of what you're talking about happened before the charge . . . contained within indictment 3499." The trial court then denied the motion and issued a written order. Appellant did not request findings of fact and conclusions of law.

Appellant concedes that pretrial publicity did not jeopardize his right to a fair trial but asserts that his general reputation in the community was so poor that it created such prejudice against him that he could not obtain a fair trial in Fisher County. However, Appellant concedes that the pretrial publicity was not inflammatory. In addition, there was no evidence in the record that Deputy Baxter, the city manager, or any other government official identified by Appellant had any connection to publicity about Appellant or this case. In addition, three years had passed between negative social media attention and the hearing.

Appellant argues that the trial court orally acknowledged during the hearing that Appellant had "a general reputation issue." But in the absence of findings of fact and conclusions of law, we "must view the evidence 'in the light most favorable to the trial court's ruling' and 'assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.'"

8

*Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006) (quoting *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)). Deputy Baxter asserted in his affidavit that Appellant could receive a fair trial. And, at the hearing, the prosecutor elicited admissions from three of Appellant's witnesses that they had a personal bias in favor of Appellant. The trial court weighed Hurt's testimony about old social media comments against Deputy Baxter's testimony that Appellant could receive a fair trial. On this record, we cannot say that the trial court abused its discretion when it denied Appellant's motion because Appellant had not met the great prejudice standard.

### 3. *Second Statutory Basis: Dangerous Combination*

Appellant also complains that there was a dangerous combination against him. Under the second statutory basis concerning a dangerous combination of influential persons, the defendant must show that "the actions of a small but influential or powerful group . . . are likely to influence in some manner the way in which the trial proceeds." *Ryser v. State*, 453 S.W.3d 17, 36 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting George E. Dix & John M. Schmolesky, 42 *Texas Practice: Criminal Practice and Procedure* § 30.11 (3d ed. 2011)). *Cortez* provides an extreme example. *Cortez v. State*, 69 S.W. 536, 537–38 (Tex. Crim. App. 1902). In *Cortez*, about sixty or seventy influential residents donated money toward the effort to arrest the defendant, while some of those residents participated in a posse that pursued the defendant and later served as witnesses. *Id.* Once the defendant was apprehended, law enforcement had to transfer him to a jail in another county due to fears of mob violence. *Id.*; *see Ryser*, 453 S.W.3d at 36–37. In contrast to *Cortez*, in *Stanley*, "one witness characterized the victim's father as a 'powerful man'" in the county, but the witness's testimony provided no basis for the statement. *Stanley v. State*, 664 S.W.2d 746, 753 (Tex. App.—San Antonio 1983, pet. ref'd).

That testimony fell "far short of disclosing a dangerous combination" against the defendant. *Id.*

The case before this court more closely resembles *Stanley*, although a defendant does not have to show threats of mob violence to prevail at trial. In Appellant's case, he identified the city manager, a former employer, and Deputy Baxter as individuals who he believed were trying to influence his trial. Appellant alleged in his affidavits that the State's witnesses were well known, and one witness testified that she believed some individuals were leading a "campaign" against Appellant. However, that witness admitted that she was biased in favor of Appellant, and on cross-examination, Appellant admitted that he had no knowledge that anyone other than Deputy Baxter had anything to do with whether his case was prosecuted. Appellant could not identify anyone outside of the State's witnesses who he believed had influenced the proceedings. Because Deputy Baxter testified that he did not want to influence the trial and that he did not attend any of the local meetings about crime, the trial court could have found that there was no basis for the testimony about influential persons influencing the trial. As a result, Appellant failed to show that the trial court abused its discretion when it denied the motion for change of venue on this second statutory basis of dangerous combination. We overrule Appellant's first issue.

> C. *Issue Three: Appellant failed to preserve his complaint on the State's failure to turn over allegedly material evidence because he failed to timely present the issue to the trial court.*

In Appellant's third issue, he argues that he is entitled to a new trial because the State failed to turn over, until after trial, what he alleged was material evidence. Although Appellant raised this issue in a motion for new trial with the trial court and filed a motion with this court to abate this appeal, the former was never heard and the latter was denied because a review of the record reflects that Appellant failed to timely file his motion for new trial. Criminal defendants must file a motion for new

trial no later than thirty days after sentencing. TEX. R. APP. P. 21.4. If an original motion for new trial is filed beyond that deadline, the trial court has no jurisdiction to consider it. *See State v. Moore*, 225 S.W.3d 556, 566–67, 569 (Tex. Crim. App. 2007); *State v. Holloway*, 329 S.W.3d 247, 251 (Tex. App.—Texarkana 2010), *aff'd*, 360 S.W.3d 480 (Tex. Crim. App. 2012). At the time that Appellant filed his motion for new trial, the trial court had lost jurisdiction because more than four months had passed since Appellant was sentenced and because this court had already filed the appellate record in this cause. *See Moore*, 225 S.W.3d at 568–69; *see also* TEX. R. APP. P. 21.4(a), 21.8(a), 25.2(g). Because Appellant's motion was untimely and the trial court could not consider it, Appellant failed to preserve his complaint for our review. *See* TEX. R. APP. P. 33.1(a). We overrule Appellant's third issue.

### III. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

July 19, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[1]

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.