PD-0591-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/22/2015 4:28:33 PM
Accepted 7/24/2015 10:03:48 AM
ABEL ACOSTA
CLERK

No. PD-

IN THE COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

**ABRAHAM PARRA**

**VS.**

**THE STATE OF TEXAS**

Appealed From the 13TH Court of Appeals
No. <u>NO. 13-13-00490</u>

Original Conviction in the
District Court of Cameron County Texas
138th Judicial District Court
Cause No. 2012-DCR-986-B

**PETITION FOR DISCRETIONARY REVIEW**

FILED IN
COURT OF CRIMINAL APPEALS

July 24, 2015

ABEL ACOSTA, CLERK

DOUGLAS H. PETTIT
680 East St. Charles St.
Suite 600
Brownsville, Texas
(956) 243-64555
Email: dpettitlaw@hotmail.com

ATTORNEY FOR PETITIONER

0

# INDEX

IDENTIFICATIONOF THE PARTIES . . . . . . 2,3

TABLE OF AUTHORITIES . . . . . . . 4

STATEMENT REGARDING ORAL ARGUMENT . . . 5

STATEMENT OF THE CASE . . . . . . . 6

PROCEDURAL HISTORY . . . . . . . 7

QUESTION PRESENTED FOR REVIEW . . . . . 9

QUESTION PRESENTED FOR REVIEW NUMBER ONE. . . 10
  The Honorable 13th Court of Appeals has incorrectly found that the evidence was
  sufficient under the law of parties to convict the Petitioner.

REASON FOR REVIEW . . . . . 10

ARGUMENT AND AUTHORITIES. . . . . . 11

QUESTION PRESENTED FOR REVIEW NUMBER TWO . . .16
  The Honorable 13th Court of Appeals in conducting a harm analysis under
  **Tex. R. App. Proc. 44.2 (b**) incorrectly concluded that there was a "fair
  assurance" the trial court's error in admitting hearsay testimony was
  harmless. The questionable admitted evidence was the only evidence that
  connected Petitioner to the alleged murder.

REASON FOR REVIEW . . . . . 16

ARGUMENT AND AUTHORITIES. . . . . . 17

PRAYER FOR RELIEF . . . . . . . 20

CERTIFICATE OF COMPLIANCE . . . . . . 21

CERTIFICATE OF SERVICE . . . . . . . 22
APPENDIX attached

## IDENTIFICATIONOF THE PARTIES

Pursuant to **Tex. R. App. 68.4(a)** a complete list of the names and addresses of all interested parties is provided so the members of this Honorable Court may determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Complaints or aggrieved parties:**     Reyes Bocanegra

**Petitioner or criminal defendant:**     Abraham  Parra

**Trial counsel for Petitioner:**     Hon. Nat Perez
847 E Harrison St.
Brownsville, Texas 78520

**Counsel on appeal for the Petitioner:**     Hon. Douglas H. Pettit
680 East St. Charles
Suite 600
Brownsville, Texas 78520

**Counsel for the State at trial:**     Hon. Gustavo Garza
Assistant District Attorney
964 East Harrison St.
Brownsville, Texas 78520

**Counsel for the State on Appeal**     Hon. Luis Saenz
Assistant District Attorney
964 East Harrison St.
Brownsville, Texas 78520

**Trial Judge:**     Hon. Arturo Nelson
Presiding Judge

2

138th District Court
Cameron County, Texas

**Appellate Court:**        13th Court of Appeals
Panel Consisting of Justices
Valdez, Rodriquez,  and Longoria,
Opinion by Justice Longoria

# TABLE OF AUTHORITIES

## TEXAS PENAL CODE

TEX. P. CODE 19.03 (a)(2)   .   .   .   .   .   .   .   7

TEX. P. CODE 20.04   .   .   .   .   .   .   .   .   7

## TEXAS CASES

Adames v. State 353 S.W.3rd 854 (Tex. Crim. App 2011   .   .   .   .13

Billings v. State, 399 S.W.3d 581, 589 (Tex. App. 2013)   .   .   .   .17

Malik v. State 953 S.W. 2d. 234 (Tex. Crim. App 1997)   .   .   .   .13

Powell v. State 88 S.W.2nd 794 (Tex. App—El Paso 2002)   .   .   16

Sorrells v. State, 343 S.W.3d 152 (Tex. Crim. App. 2011).   .   .   10

Thomas v. State 444 S.W.3d 4 (Tex. Crim. App. 2014)   .   .   .   10

## TEXAS RULES APPELLATE PROCEDURE

TEX. R. APP. P. 68.4   .   .   .   .   .   .   .   .   6

TEX. R. APP. P.9.4(i)1(D)   .   .   .   .   .   .   .   19

Tex. R. App. Proc. 44.2 (b).   .   .   .   .   .   .   9,16,17

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to **TEX. R. APP. P. 68.4**, if this court grants this Petition for Discretionary Review, Petitioner requests oral argument in order to expand upon the arguments herein.

## STATEMENT OF THE CASE

The Petitioner was charged in a single indictment with one count of capital murder and one count of aggravated kidnapping. (C.R. Vol. 1 p. 12) Count one alleged the Petitioner on or about the 18th Day of July 2012 shot Reyes Bocanegra while in the course of committing kidnapping. **TEX. P. CODE 19.03 (a)(2)** (C.R. Vol. 1 p. 12)

Count two alleged the Petitioner restricted Reyes Bocanegra's liberty without his consent by moving him from one place to another with the intent to prevent his liberation, by secreting or holding him in a place where he was not likely to be found and the defendant did then and there use or exhibit a deadly weapon to wit a firearm. **TEX. P. CODE 20.04** (C.R. Vol. 1 p. 12)

The Petitioner entered a plea of not guilty (R.R. Vol. 4 p. 8) and after hearing the evidence from both the State and the defense, a jury found Petitioner guilty of both counts. (R.R. Vol. 6  p.8).

Petitioner  was sentenced to automatic life by the Court on count one, the capital murder charge (R.R. Vol. 6 p.40)  and opted to be sentence by the jury on count two (R.R. Vol. 6 p 12).  The jury assessed punishment at (50) fifty years in the Texas Department of Corrections on count two. (R.R. Vol.6  p.37 )

Petitioner filed motion for new trial that was overruled.  On April 9, 2015

6

the 13th Court of Appeals in a Memorandum Opinion affirmed in part and vacated the aggravated kidnapping convictions. Petitioner timely filed his request for En Banc consideration and Motion for Rehearing. This was overruled on June 26, 2015 and this Petition is due on or before July 27, 2015.

# STATEMENT OF PROCEDURAL HISTORY

A panel of the Thirteenth Court of Appeals affirmed the trial court's ruling, in a memorandum opinion dated April 9, 2015. The Petitioner did file a motion for rehearing in this cause which was denied on June 26, 2015. Petitioner has not filed an extension to file the PDR. This Petition is due to be filed on or before July 27, 2015.

# QUESTION PRESENTED FOR REVIEW

1. The Honorable 13th Court of Appeals has incorrectly found that the evidence was sufficient under the law of parties to convict the Petitioner.

2. The Honorable 13th Court of Appeals in conducting a harm analysis under Tex. R. App. Proc. 44.2 (b) incorrectly concluded that there was a "fair assurance" the trial court's error in admitting hearsay testimony was harmless. The evidence admitted was the only evidence that connected the Petitioner to the shooting of the deceased

**TO THE COURT OF CRIMINAL APPEALS OF THE STATE OF TEXAS:**

**COMES NOW, ABRAHAM PARRA** Petitioner in the above entitled and numbered cause, by and through his attorney of record Douglas H. Pettit and files this Petition for Discretionary Review and, in support of which, would respectfully show this Honorable Court the following:

QUESTION PRESENTED FOR REVIEW NUMBER ONE

The Honorable 13th Court of Appeals has incorrectly found that the evidence was sufficient under the law of parties to convict the Petitioner

REASON FOR REVIEW
POINT OF ERROR NUMBER ONE

The Court's opinion under Roman Numeral II incorrectly expressed a sufficiency of the evidence to convict the Petitioner for the offense of capital murder as a party. The only evidence that connects the Petitioner to the actual death of the victim, an hour after the kidnapping, was testimony that the 13th Court of Appeals held as inadmissible.

The Court of Appeals alleges that **Thomas v. State** 444 S.W.3d 4 (Tex. Crim. App. 2014) allowed an appellate court when considering sufficiency of the evidence to consider all of the evidence even if it was improperly admitted. Citing **Thomas** id which in turn cites **Sorrells v. State**, 343 S.W.3d 152 (Tex. Crim. App. 2011) This ruling is inconsistent with the premise that properly objected to

10

inadmissible evidence that comes before the jury should not be used by the Courts of Appeals when considering sufficiency of the evidence issues.

ARGUMENT AND AUTHORITIES

On July 18, 2012 at the Mariscos Playa Azul restaurant Reyes Bocanegra was abducted by six men including the Petitioner. This event was recorded on the restaurants surveillance video and took place in front of two employees, three customers and the victim's wife (R.R. Vol. 4 p. 39) All can be seen on the video tape. (States Exhibit 29).

The victim, Reyes Bocanegra, was in the restroom when the men came into the restaurant. When he came out of the bathroom the men started "fighting him." (R.R. Vol. 4 p. 112) The Petitioner and the other men took Bocanegra out the back door. (R.R. Vol. 4 p. 128) (State's exhibit number 29) placed him in his own white Tahoe. (R.R. Vol. 4 p. 129)  The witnesses in the restaurant were unable to see who besides the deceased entered the vehicle. (R.R. Vol. 4 p. 130)

U.S. Border Patrol Agent Gabriel Mello testified that around 12:45 p.m. he received a "look out for the vehicle." (R.R. Vol. 4 p. 78) He testified that around 1:15 p.m. on Roberts Road he found the Chevy Tahoe parked with the engine still running.  (R.R. Vol. 4 p. 72) This was approximately 40 or 45 minutes after the kidnapping.  (R.R. Vol. 5 p. 140).  The car had the back passenger side window

11

broken out and Agent Mello could see a body hutched over in the back of the vehicle. (R.R. Vol. 4 p. 72) The body was identified as Reyes Bocanegra and the cause of death was a gunshot wound to the back of the head.

The Court of Appeals stated:

> "From the circumstantial evidence before it, the jury could have reasonable concluded that Petitioner and the other five men planned to commit both kidnapping and murder and the Petitioner aided in the commission of both." (Opinion p.9)

Petitioner was present at the scene of the initial kidnapping but was not connected to the eventual death of the victim. The body was found at a different location 40 to 45 minutes later. The Court extrapolates that the vehicle found abandoned nearby and less than an hour later, meant the "victim was killed relatively quickly after Petitioner and his codefendants forced him to leave with them in the vehicle."

The Court concluded that the Petitioner was in the vehicle with the deceased. Nothing in the testimony indicates that the Petitioner was in the vehicle, or if he had a gun, or he was present when the victim Mr. Reyes was shot. Further, nothing indicates that any of the codefendant's shot the victim. The only testimony was that the Petitioner walked out of the back of the restaurant with the deceased.

The Honorable Court of Appeals has used the correct standard for the

12

sufficiency of the evidence measured against elements of the offense as they are defined by the hypothetically correct jury charge for the case. **Malik v. State** 953 S.W. 2d. 234 (Tex. Crim. App 1997) The Court's charge Stated:

if you find from the evidence beyond a reasonable doubt that on or about the 18th day of July, 2012 in Cameron County, the defendant, Abraham Parra, did then and there acting alone or as a party, as that term has been previously defined, intentionally cause the death of an individual, namely, Reyes Bocanegra, by shooting Bocanegra and -- Reyes Bocanegra, and the defendant was then and there in the course of committing or attempting to commit the offense of kidnapping of Reyes Bocanegra, then you will find the defendant guilty of capital murder as alleged in Count I of the indictment. (R.R. Vol 5 p. 160)

The act of kidnapping occurred when the victim was taken out of the restaurant. The act of murder was a specific act that occurred 1 hour after the abduction. These are the known facts, the only known facts. There is no testimony that any of the individuals involved in the kidnapping committed that act of murder, were members of a cartel, or were involved in drugs as alleged by the State.

The Court cites **Adames v. State** 353 S.W.3rd 854 (Tex. Crim. App 2011 quoting the law of parties as it specifically applies in Petitioner's circumstances. However the Court leaves out the following from that case:

"Applying the law of parties to the felony capital-murder statute, with kidnapping as the underlying felony, a person is criminally responsible as a party to the offense of capital murder if, acting with the intent to promote or assist in the commission of that kidnapping by another person, **and that**

13

**other person intentionally commits murder in the course of committing or** attempting to commit that kidnapping, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the kidnapping and murder. **Adames v. State**, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011)

The testimony is totally void of any reference to whether any of the individuals committed murder. The Petitioner was found in a car miles away from the restaurant.   The Petitioner is guilty of acting as a party to the offense of aggravated kidnapping, but not as a party to the murder by unknown assailants.

The law of parties allows the jury to convict if participating in the kidnapping one or more of the coconspirators committed the offense of murder. Nothing in the record provides any information as to whether any member of the group of individuals committed the act of murder.  The kidnapping was committed. The murder was committed at a later time by unknown assailants.

The state failed to produce one witness to say that the Petitioner was in the car with the victim when he was shot. The testimony did not proceed as anticipated by the prosecutor. None of the testimony contained anything that came close to connecting the Petitioner or his coconspirators to the murder.

There was insufficient evidence to convict the Petitioner of the charge as alleged in County One of the indictment. The Court has upheld this case based on inferences, unsupported presumptions, or building presumptions upon

14

presumptions. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.

As explained above, the evidence was totally insufficient to convict the Petitioner of the offense of capital murder as a party. The Honorable Court relies on the video tape to substantiate its decision that the video tape alone was sufficient to convict the Petitioner of the capital murder charge.

> "Petitioner is visible on the surveillance recording acting in concert with the five men, two of whom were visibly armed, to subdue the other persons present in the restaurant at gun point. The recording depicts Petitioner and the five men binding Reyes and the other persons present in the restaurant with plastic restraints that they brought with them before leaving the restaurant Petitioner pulled down Reye's shirt to check for the presence of an identifying tattoo. Petitioner is visible on the recording leading the restrained Reyes out of the restaurant. Reyes was found shot to death in the back of his vehicle less than an hour after Petitioner and the five men removed him from the restaurant. The strong circumstantial evidence supporting Petitioner's quilt weighs in favor of finding the error was harmless" (Opinion page 15)

This does not connect the Petitioner to the murder. The only testimony that the jury could have considered to connect the murder to the Petitioner was the opening statement of the prosecutor and the hearsay testimony from Detective Clipper that the Court of Appeals ruled as being inadmissible. Allowing the jury to "draw reasonable inferences from the events depicted on the video tape" (Opinion

15

page 15) does not connect the Petitioner to anything more than being a party to the offense of kidnapping.

The Honorable Court cites **Powell v. State** 88 S.W.2nd 794 (Tex. App—El Paso 2002) as a case law that directly applies to the Petitioner. This could not be farther from the situation. In Powell there was direct evidence linking her to the crime of murder. When the court in Powell ruled that the hearsay testimony of the 3 year old child was given little consideration by the jury, the jury had sufficient evidence to convict Powell since the child was in the custody of Powell at the time of her arrest.

The Court of Appeals should have allowed the conviction on aggravated kidnapping stand and found that the evidence for the offense of capital murder was insufficient.

QUESTION PRESENTED FOR REVIEW NUMBER TWO

The Honorable 13th Court of Appeals in conducting a harm analysis under Tex. R. App. Proc. 44.2 (b) incorrectly concluded that there was a "fair assurance" the trial court's error in admitting hearsay was harmless. The questionable admitted evidence was the only evidence that connected Petitioner to the alleged murder.

REASON FOR REVIEW
POINT OF ERROR NUMBER TWO

The Court of Appeals correctly ruled that the testimony of Detective Clipper implicating the Petitioner as the shooter was hearsay and should not have been

16

admitted. However the Court incorrectly asserted that there was "a fair assurance" that this evidence harmless. This was the only evidence connecting the Petitioner to the alleged offense and was emphasized by the state in opening statement and affected a substantial right and had an injurious effect or influence in determining the jury's verdict

## ARGUMENT AND AUTHORITIES

When conducting a Rule 44.2(b) harm analysis based upon the erroneous admission of evidence, an appellate court should consider everything in the record, including: Any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. **Billings v. State**, 399 S.W.3d 581, 589 (Tex. App. 2013)

As stated in the Court's opinion, nothing directly links the Petitioner to the murder, only to the kidnapping. The following testimony is the only evidence that the Petitioner had any connection to the murder to Reyes Bocanegra.

Prosecutor: Detective Clipper without going into the statement of anybody you interviewed, anybody, defendants, witnesses at all, through your

17

investigation, Detective Clipper , did you learn who shot and killed Reyes Bocanegra (R.R. Vol. 5 p. 93)

Clipper:                Yes

Prosecutor:         Who shot and killed Reyes Bocanegra

Defense Attorney: Objection, your Honor

Judge:               What is your legal objection

Defense Attorney: Hearsay

Judge:               Overruled

Clipper:                The defendant Abraham Parra.  (R.R. Vol. 5 p. 93)

Prosecutor  "From your investigation, sir did you learn whether or not the kidnapping and murder of Reyes Bocanegra was intentionally done?" (R.R. Vol. 5 p.94)

Prosecutor:  Did you learn whether this shooting had been in the course of committing kidnapping of Reyes Bocanegra?

Clipper:    Yes we did.

Prosecutor:  Did you have any information indicating that this was an intentional act?

Petitioner's attorney:      Objection 602

Court:    Sustained

Prosecutor:  Okay. From your investigation, sir, did you learn whether or not the kidnapping and murder of Reyes Bocanegra was in (sic) intentionally done

18

Objection    602, Hearsay

Court:       Overruled

Clipper:     It was done intentionally (R.R. Vol. 5. p. 95)

The Court's assumption as to the presence of the Petitioner in the car is predicated on the oral statements of the prosecutor and the testimony from Detective Clipper that were ruled to be inadmissible. The facts presented to the jury consists of the video of the kidnapping and the eventual death of Reyes.

Beginning with the opening statement the State prosecutor outlined the case they intended to present to the jury. The prosecutor explained that they could expect to hear this was a Mexican cartel murder. (R.R. Vol 3 p.10) and a drug related crime (R.R. Vol 3. P. 11-13). The argument continued with the prosecutor explaining how the murder occurred. The Petitioner was responsible for the death of the victim, there was a struggle in the car, and Petitioner ended up shooting Reyes. (R.R. Vol 3 p. 13-14) Nothing during the trial was even close to the allegations made by the district attorney. The oral argument clearly outlined the state's theory of the case not one bit of that evidence was presented to the jury. The entire testimony of witnesses only shows the kidnapping. Nothing shows that the Petitioner did any more than assist in the kidnapping of the victim. No testimony exists that the Petitioner was present when Bocanegra was killed or had

19

been involved in a plan to kill Bocanegra. The evidence should have been ruled as harmful and Court should have found that the jury's verdict was substantially affected and influenced by the erroneously admitted evidence.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Petitioner prays this Honorable Court to consider the ground for review raised herein to grant this petition for discretionary review, and to order a full and complete hearing on the merits with briefs.

Respectfully submitted,

<u>/S/Douglas H. Pettit</u>
Douglas H. Pettit
680 East St. Charles Ave
Suite 600
Brownsville, Texas 78520
956-243-6455
Email: Dpettitlaw@hotmail.com
State Bar Number 15861300

ATTORNEY FOR PETITIONER

# CERTIFICATE OF COMPLIANCE

Pursuant to TEX R. APP. P 9.4 (1)(i)(1), I certify that this document

complies with the type volume limitations of  TEX. R. APP P 9.4(i)(2)(D):

1.  Exclusive of the exempted portions set out in TEX R. APP P 9.4(i)(1)(D) and this document contains  words 2793

2.  This document was prepared in proportionally spaced typeface using MicroSoft Office New Times Roman 14 for Text and Times New Roman 12 for footnotes

/s/Douglas H. Pettit

Douglas H. Pettit

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served by hand delivery to the Cameron County District Attorney's Office. On this the 23 day of July 2015.

/s/ Douglas H. Pettit
Douglas H. Pettit


This is to certify that a true and correct copy of the foregoing instrument has been served on the State Prosecuting Attorney by mail on this the 23day of July 2015.

State Prosecuting Attorney
P.O. Box 12405
Austin, Texas 78711

/s/ Douglas H.  Pettit
Douglas H. Pettit

22



## NUMBER 13-13-00490-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

ABRAHAM PARRA,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

---

### On appeal from the 138th District Court
### of Cameron County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria**
**Memorandum Opinion by Justice Longoria**

By six issues, which we have reordered, appellant Abraham Parra challenges his

convictions for capital murder with the underlying offense of aggravated kidnapping

(Count I), and for a separate charge of aggravated kidnapping based on the same facts as the kidnapping offense contained within Count I (Count II).  *See* TEX. PENAL CODE ANN. §§ 19.03(a)(2); 20.04 (West, Westlaw through 2013 3d C.S.).  We affirm as modified.

## I. BACKGROUND

### A. Background Facts

At approximately noon on July 18, 2012, a group of six men, one of whom was appellant, entered the Mariscos Playa Azul restaurant located on the Old Military Highway in Cameron County, Texas.  They proceeded to sit down at a table.  The following other persons were present in the restaurant when the six men entered:  Reyes Bocenegra (Reyes), Reyes's wife, Gloria Barrera, Arabella De La Cruz, the cashier, and Anna D. Garcia, the cook.  Also present were Esmeralda Barrera, Jose Castillo, Rubio Castillo, and Jorge Castillo, a family eating lunch.  A short time later, one of the six men rose from the table and forced De La Cruz, the cashier, at gunpoint into the back of the restaurant. Two of the men forced De La Cruz and Garcia to lie down on the floor and restrained them with duct tape.  Appellant carried the duct tape and helped restrain both women. Other members of the group forced Esmerelda Barrera, Gloria Barrera, and the Castillos at gunpoint to lie on the floor in the front part of the restaurant.  The men restrained the adults with plastic zip ties and took their cell phones.  At this time, Reyes emerged from the bathroom.  The men overpowered him after a brief fight and bound his hands with a plastic zip tie.  Jorge Castillo testified at trial that appellant raised Reyes's sweatshirt to check for an identifying tattoo of Reyes's last name on his back.  The men forced Reyes to leave with them at gunpoint in Reyes's white Chevy Tahoe.  The surveillance tape

2

reveals that appellant led the restrained Reyes out of the restaurant. One of the six men drove off in the vehicle in which the men had arrived at the restaurant.

At approximately 1:15 p.m. the same day, U.S. Border Patrol Agent Gabriel Mello (Mello) found an abandoned white Chevy Tahoe parked with its engine running on Roberts Road. The back seat passenger-side window had been broken out and Reyes's body was slumped in the backseat of the vehicle. Mello located a plastic tie on the floorboard near the body. Elizabeth Miller, the state's pathologist, testified that Reyes died from a gunshot wound to the back of the head.

Detective Thomas Clipper (Clipper) of the Brownsville Police Department investigated the case. During the course of his investigation, Clipper viewed the body before it was removed from the crime scene, interviewed witnesses, and reviewed surveillance videos both from the restaurant and other nearby locations. The surveillance videos allowed him to identify the vehicle in which the six men drove to the restaurant. This information eventually led to the arrest of six persons, all of whom Clipper interviewed. Clipper interviewed appellant in Laredo, Texas, shortly after his apprehension by United States Marshals.

### B. Proceedings in the Trial Court

Appellant and the State entered into an agreed motion in limine that the State would not use any statements that appellant made during the interview in Laredo during the State's case in chief unless appellant "opened the door" during his own testimony. At trial, Jorge Castro, one of the other persons accused in the case, was set to testify for the State pursuant to a plea agreement. Castro had earlier signed a statement alleging that appellant personally shot Reyes, but, at trial, Castro invoked his Fifth Amendment rights

3

and declined to testify to anything except what was depicted on the video from the restaurant. The State next called Clipper, the investigating officer assigned to the case. Appellant had not yet testified.

After Clipper testified that he traveled to Laredo after appellant's apprehension, the State asked "[a]nd did you talk to [appellant] up there?" Appellant objected, citing the motion in limine. The prosecutor replied:

> I remember the agreement and counsel is correct. There is an agreement. There's been a very serious breach, not by counsel but by the co-defendant, and I think it's very clear to everybody concerned that the State has been sabotaged and surprised and I need to find a solution.

However, the prosecutor also stated that "I don't intend to break my agreement, Judge." The court overruled the objection and permitted the testimony to continue. The following exchange occurred:

| | |
|---|---|
| [State]: | Detective Clipper, without going into the statement of anybody you interviewed, anybody, defendants, witnesses at all, through your investigation, Detective Clipper, did you learn who shot and killed Reyes Bocanegra? |
| [Clipper]: | Yes, I did. |
| [State:]: | Who shot and killed Reyes Bocanegra? |
| [Defense]: | Objection, Your Honor. |
| [Court]: | What's the legal objection? |
| [Defense]: | Objection is going to be [*sic*] it's hearsay. |
| [Court]: | Overruled |
| [Clipper]: | The defendant Abraham Parra |
| [State]: | The one sitting here today? |
| [Clipper]: | Yes, sir. |

4

[State]: And, sir, was this shooting in the course of committing kidnapping of Reyes Bocenegra?

[Defense]: Objection. Hearsay and [Rule] 602. He doesn't have personal knowledge.

[State]: I'll rephrase the question

[Court]: Sustained.

[State]: Detective Clipper, through your investigation, did you learn whether or not the shooting of Reyes Bocenegra by the defendant Abraham Parra was in the course of committing kidnapping of Reyes Bocanegra?

[Defense]: Objection, [Rule] 602, no personal knowledge and also asking for hearsay.

[Court]: Overruled.

[Defense]: I would ask for a limine instruction, Your Honor.

[Court]: Yes. Ladies and Gentlemen of the Jury, you are the sole witness of the credibility—if you are sole judges of the credibility of the witness. You can believe everything what a witness says, none of what a witness says, or some of what a witness says. You may—in considering the credibility of the witness, you will also consider all the other factors that I've gone through before. The stake that the witness may have on behalf of the defendant, the stake they may have on behalf of the State, the motivation of why they may say one thing or another. That is all within your purview. Proceed.

[State]: Did you learn whether this shooting had been in the course of committing kidnapping of Reyes Bocanegra?

[Clipper]: Yes, we did.

[State]: Now, sir, on July 1, 2012 from your investigation who shot Reyes Bocanegra?

[Defense]: I object again. He has no personal knowledge, Your Honor, under [Rule] 602.

5

| [Court]: | It's repetitive. Sustained. |
|---|---|
| [Defense]: | Thank you. |
| [State]: | From your investigation, sir, was this in Cameron County, state of Texas? |
| [Clipper]: | Yes, sir. |
| [State]: | Do you have any information indicating that this was an intentional act? |
| [Defense]: | Objection, Your Honor, [Rule] 602. |
| [Court]: | Sustained |
| [State]: | I'll repeat my question. |
| [Defense]: | I'll repeat my objection. |
| [State]: | Do you have any information that this was an unintentional act? |
| [Defense]: | 602 objection, Your Honor. |
| [Court]: | Sustained |
| [State]: | Okay. From your investigation, sir, did you learn whether or not the kidnapping and murder of Reyes Bocanegra was intentionally done? |
| [Defense]: | I'm going to object again as to [Rule] 602. |
| [Court]: | Overruled. |
| [Defense]: | I object as to what he learned being hearsay, Your Honor. |
| [Court]: | Overruled. |
| [Clipper]: | It was intentionally done. |

Following the close of evidence, the court submitted the case to the jury. The jury charge permitted the jury to convict appellant on Count I either as the actor or under the

6

law of parties, *see* TEX. PENAL CODE ANN. § 7.02 (West, Westlaw through 2013 3d C.S.), but permitted the jury to convict appellant only as the actor on Count II. The jury returned a general verdict of guilty on both counts, and assessed punishment on Count II at fifty years' imprisonment. The trial judge imposed the statutorily-mandated automatic sentence of imprisonment for life without parole on Count I. *See id.* § 12.31(a) (West, Westlaw through 2013 3d C.S.). Appellant timely filed a notice of appeal.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant challenges the trial court's decision overruling his motion for a directed verdict. In the criminal context, we treat an appeal from the denial of a directed verdict as a challenge to the sufficiency of the evidence. *See Garza v. State*, 398 S.W.3d 738, 743 (Tex. App.—Corpus Christi 2010, pet. ref'd).

### A. Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, appellate courts view all the evidence in the light most favorable to the jury's verdict and determine whether, based on that evidence and reasonable inferences drawn from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We are mindful that it is the province of the jury, acting as the trier of fact, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). Circumstantial evidence is as probative as direct evidence, and circumstantial evidence alone can suffice to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to the

7

guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). In this review, we consider all of the evidence before the jury, even if it was improperly admitted. *Id.*

We measure the sufficiency of the evidence by the elements of the offense as they are defined by the hypothetically correct jury charge for the case. *Id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge is authorized by the indictment, accurately sets out the law, does not unnecessarily increase the State's burden of proof or unnecessarily restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Sanchez v. State*, 376 S.W.3d 767, 772 (Tex. Crim. App. 2012). Under the law of parties, the hypothetically-correct jury charge required the State to prove that appellant: (1) when acting with the intent to promote or assist another person in the commission of kidnapping, and that person intentionally committed murder in the course of committing or attempting to commit that kidnapping; (2) solicited, encouraged, directed, aided, or attempted to aid the other person to commit both the kidnapping and the murder. *Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011).

Evidence that the accused was present at the scene of the crime is by itself insufficient to sustain a conviction under the law of parties; there must be some evidence of the parties acting together, each contributing some part towards the execution of their common purpose. *Nelson v. State*, 405 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Hernandez v. State*, 198 S.W.3d 257, 261 (Tex. App.—San Antonio 2006, pet. ref'd). The factfinder may examine events occurring before, during, and after

the commission of the offense and may rely on the actions of the defendant to show an understanding and common design to commit the offense. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

### B. Discussion

Appellant asserts that the evidence is sufficient only to show that he intended to aid another person in the commission of kidnapping and that he did assist in the commission of kidnapping. Appellant argues that there is no evidence he also intended to assist in the commission of murder or that he solicited, encouraged, directed, aided, or attempted to aid any person in the commission of that offense. Therefore, according to appellant, the evidence is insufficient to convict him of murder under the law of parties. We disagree.

Evidence of a common plan is usually established by the actions of the parties. *See id.* From the circumstantial evidence before it, the jury could have reasonably concluded that appellant and the other five men planned to commit both kidnapping and murder and that appellant aided in the commission of both. The restaurant surveillance video shows all of the men, two of who were armed, acting in concert. Appellant carried the duct tape and assisted in restraining De La Cruz and Garcia while the other men held them at gunpoint. Appellant lifted Reyes's shirt to confirm the presence of an identifying tattoo of Reyes's name, led the restrained Reyes out of the restaurant, and forced him to leave with them in Reyes's vehicle. The Tahoe was found abandoned nearby less than an hour later, meaning Reyes was killed relatively quickly after appellant and his codefendants forced him to leave with them in the vehicle. The jury could reasonably infer from these facts that the plan of the six men was to kidnap Reyes, remove him from

9

the restaurant, and then kill him. Appellant's argument is essentially that the forgoing facts are just as consistent with only having a common design to commit kidnapping, but we may not substitute our judgment for that of the jury. *See Gear*, 340 S.W.3d at 746. All of these facts, especially the short amount of time between the kidnapping and the death of Reyes, are sufficient circumstantial evidence for the jury to conclude that appellant and his codefendants shared a common design to commit both kidnapping and murder and that appellant actually did solicit, encourage, direct, aid, or attempt to aid the commission of both offenses. *See Adames*, 353 S.W.3d at 862. Having found the evidence to be sufficient under the law of parties, we overrule appellant's first issue.[1]

### III. HEARSAY

Appellant argues in his second issue that the trial court erred in overruling his hearsay objection to Clipper's testimony that appellant shot Reyes and that the shooting was intentional. *See* TEX. R. EVID. 802. We agree, but conclude that the error was harmless.[2]

### A. Standard of Review and Applicable Law

We review a trial court's decision to admit evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). We will not reverse as long as the judge's decision lies within the zone of reasonable disagreement. *McCarty v.*

---

[1] The jury charge on Count I also permitted the jury to convict appellant as the actor. We address only the sufficiency of the evidence supporting the conviction under the law of parties because it is dispositive. *See* TEX. R. APP. P. 47.1.

[2] Appellant mentions in the statement of facts attached to this issue that he objected to Clipper's testimony regarding which persons drove the vehicles involved in the kidnapping, but does not mention this testimony again. To the extent appellant means to include this portion of Clipper's testimony under his hearsay issue, the objection is waived because he objected at trial on Rule 602 grounds and did not mention hearsay. *See Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996) (en banc) ("An objection stating one legal basis may not be used to support a different legal theory on appeal."). Appellant also does not mention this testimony under his Rule 602 issue, below.

10

*State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). The rules of evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801. Hearsay is inadmissible except as provided by statute or rule. *Id.* R. 802. An out-of-court statement need not be directly quoted to implicate the prohibition against hearsay. *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999). The relevant question when the issue of back-door hearsay is raised is whether there "is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom." *Id.* (citing *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989)). Whether the conclusion is "inescapable" depends in large part on how strongly the content of the out-of-court statements may be inferred from the context. *Id.* at 262; *see Poindexter v. State*, 153 S.W.3d 402, 408 n. 21 (Tex. Crim. App. 2005) (explaining that, under *Head*, an officer's testimony that "I received information of possible drugs being sold at 5th and Main" is admissible as an explanation for why an officer began an investigation, while an officer's testimony that "I received information that drugs were being sold from the defendant's house" too clearly conveyed that the source of the information was an out-of-court statement and would be inadmissible unless offered for another purpose).

### B. Did the Trial Court Err in Admitting the Evidence?

Appellant objects to two portions of Clipper's testimony. Clipper first testified that appellant was the person who shot and killed Reyes:

> [State]:  Detective Clipper, without going into the statement of anybody you interviewed, anybody, defendants, witnesses at all, through your investigation, Detective Clipper, did you learn who shot and killed Reyes Bocanegra?

11

[Clipper]: Yes, I did.

[State:]: Who shot and killed Reyes Bocanegra?

. . .[3]

[Clipper]: The defendant Abraham Parra

[State]: The one sitting here today?

[Clipper]: Yes, sir.

Clipper later testified that the death of Reyes was intentional:

[State]: Okay. From your investigation, sir, did you learn whether or not the kidnapping and murder of Reyes Bocanegra was intentionally done?

[Defense]: I'm going to object again as to [Rule] 602.

[Court]: Overruled.

[Defense]: I object as to what he learned being hearsay, Your Honor.

[Court]: Overruled.

[Clipper]: It was intentionally done.

Appellant argues that it would have been impossible for Clipper to have the knowledge to testify that (1) appellant shot Reyes and (2) that the murder was intentionally done unless he was repeating information that he learned in interviews with appellant or the other five men. The State responds that there is no back-door hearsay problem because no portion of the questions suggested that the information was gained from another person, and, even if Clipper was testifying regarding the contents of a statement, the State did not seek any identifying information regarding the declarant.

---

[3] We omitted appellant's various objections here, but reproduced this exchange in full in the background section of this opinion.

12

We agree with appellant. In *Burks v. State*, a similar exchange occurred during the testimony of J.R. Price, a detective who investigated the murder at issue in the case:

> State: After talking to Jesse Contreras, and please let me remind you not to tell me what if anything Mr. Contreras told you, did you go searching or looking for a particular description of an individual?
>
> Price: Yes, sir.
>
> State: What is that?
>
> Price: A black male, somewhat smaller build than Mr. Contreras, having in his possession a black ski mask or toboggan type cap.

876 S.W.2d 877, 898 (Tex. Crim. App. 1994) (en banc). Price gave almost identical testimony about the description of the person he searched for after speaking with another witness. *Id.* The Texas Court of Criminal Appeals concluded that this testimony was inadmissible hearsay because the State indirectly elicited testimony from Price regarding what the witness told him by asking about the particular description of individual the officer searched for after questioning the witnesses. *Id.* This case admittedly differs from many cases involving back-door hearsay because the specific identity of the declarant of the statements is unclear. Nevertheless, viewed in context, the conclusion is inescapable that Clipper was testifying either about statements appellant made during the interview, Jorge Castro's statements, or statements that one of the other accused men made during their interviews. The State asked Clipper whether he interviewed appellant and, like the prosecutor in *Burks*, immediately asked appellant what he learned from his investigation about who actually shot Reyes. Later, after the trial judge permitted appellant's attorney to take Clipper on voir dire, Clipper admitted that he learned who did the shooting "from the suspects." Shortly afterwards, the State asked Clipper on direct examination if he learned through his investigation whether the kidnapping and murder of Reyes was

13

intentionally done and he replied that it was intentional. While we agree with the State that Clipper's investigation involved more than interviews with appellant and the others, nothing in Clipper's testimony suggests a source for his statements other than interviews with the alleged perpetrators. Viewed in the context of the trial, including the prosecutor's statement that he needed to find an alternative for Castro's testimony and Clipper's admission that he learned who did the shooting "from the suspects," the conclusion is inescapable that Clipper was testifying to statements appellant or Castro made during their interviews with him. *See id.*; *see also Head*, 4 S.W.3d at 261.

### C. Harm

Having determined that the trial court erroneously admitted Clipper's testimony that appellant shot Reyes and that the murder was intentionally done, we now analyze for harm. We generally review the erroneous admission of hearsay evidence for non-constitutional error under Texas Rule of Appellate Procedure 44.2(b). *Whitaker v. State*, 286 S.W.3d 355, 363 (Tex. Crim. App. 2009); *see* TEX. R. APP. P. 44.2(b). Under this standard, we must disregard the error if we have a "fair assurance" that the error did not influence the jury's verdict or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). When assessing the likelihood that the error adversely affected the jury's decision, appellate courts consider everything in the record. *Id.* We pay particular attention to factors such as the other evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). We may also consider the jury instructions, the State's theories, any defensive theories, closing arguments, voir dire, and the State's emphasis on the error. *Id.* at 518–19.

14

After a thorough review of the record, we conclude that the harm from admitting the portions of Clipper's testimony at issue here was minimal. As we explained in Part II of this opinion, there was substantial evidence that appellant was guilty of murder under the law of parties. Appellant is visible on the surveillance recording acting in concert with the five men, two of whom were visibly armed, to subdue the other persons present in the restaurant at gunpoint. The recording depicts appellant and the five men binding Reyes and the other persons present in the restaurant with plastic restraints that they brought with them. Before leaving the restaurant, appellant pulled down Reyes's shirt to check for the presence of an identifying tattoo. Appellant is visible on the recording leading the restrained Reyes out of the restaurant. Reyes was found shot to death in the back of his vehicle less than an hour after appellant and the five men removed him from the restaurant. The strong circumstantial evidence supporting appellant's guilt weighs in favor of finding that the error was harmless. *See Powell v. State*, 88 S.W.3d 794, 801 (Tex. App.—El Paso 2002, pet. struck) (holding that strong circumstantial evidence connecting the defendant to the crime weighed in support of finding that the erroneous admission of evidence was harmless). The State did not mention the hearsay again following Clipper's testimony,[4] but focused the remainder of its case and its closing argument on asking the jury to draw reasonable inferences from the events depicted on the surveillance recordings. Given the other evidence supporting the verdict and the lack of emphasis on the hearsay, the jury likely gave little consideration to the hearsay in connection with the other evidence introduced by the State. *See Haley*, 173 S.W.3d at

---

[4] The only further mention of the hearsay portion of Clipper's testimony was in appellant's closing argument when he reemphasized his position that it was impossible for Clipper to have the knowledge to make either statement.

15

518. Appellant argues that Clipper's evidence contradicted his defensive theory that he was not in the Tahoe but could have been the one driving the other vehicle, but there is no requirement that a defendant be physically present at the commission of the offense to be guilty under the law of parties. *See Guevara*, 152 S.W.3d at 52 (observing that the penal code "does not require that a party to the crime be physically present at the commission of the offense") (citing *Morrison v. State*, 608 S.W.2d 233, 234 (Tex. Crim. App. [Panel Op.] 1980)). We have a fair assurance the court's error in the admitting Clipper's testimony was harmless and did not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's second issue.

## IV. CONFRONTATION CLAUSE

By his third issue, appellant argues that the trial court erred in overruling his Confrontation-Clause objection to Clipper's testimony that appellant shot Reyes. *See* U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 51–52 (2004). We disagree.

During the portion of Clipper's testimony that we quoted in the background section of this opinion, appellant objected at various times on the basis of hearsay and Rule 602, but appellant did not object on Confrontation-Clause grounds. At the end of this testimony, the trial judge permitted appellant to take Clipper on voir dire. The following exchange occurred:

> [Defense]: And the testimony that when you're answering did you learn, without getting names, without getting in [*sic*] a specific, this information you obtained from talking to either one or the other or a combination of defendants; is that correct?
>
> [Clipper]: Correct
>
> [Defense]: From nowhere else?

16

[Clipper]:      In reference to?

[Defense]:      Like, for example, who went inside, who stayed outside, who supposedly did the shooting?

[Clipper]:      Of course, those were from the suspects.

[Defense]:      And I would also amend that objection to include Crawford violations, Your Honor.

The trial court sustained the objection but did not give an instruction to the jury to disregard any of Clipper's testimony.  Appellant admits in his brief on appeal that he did not object until after Clipper had given the allegedly objectionable testimony and the trial court ruled on his other objections, but argues that "[t]he fact that trial counsel failed to object until the end of the direct examination should have still placed the Trial Court on notice and told the jury to disregard all of Clipper's testimony as it related to the information learned from the codefendants."  The State responds that the Confrontation-Clause objection was untimely.

We agree with the State.  To preserve error for appeal, an objection must be both specific and timely.  TEX. R. APP. P. 33.1(a); *see Brewer v. State*, 367 S.W.3d 251, 253 (Tex. Crim. App. 2012) (observing that the rules of appellate procedure require that "the complaining party must make a timely, specific request that the trial court refuses").  The complaining party must object at the earliest possible opportunity.  *Davidson v. State*, 422 S.W.3d 750, 754 (Tex. App.—Texarkana 2013, pet. ref'd).  If a witness testifies without a contemporaneous objection, any objection to the testimony is waived.  *Zorn v. State*, 315 S.W.3d 616, 625–26 (Tex. App.—Tyler 2010, no pet.); *Hall v. State*, 303 S.W.3d 336, 341 (Tex. App.—Amarillo 2009, pet. ref'd).  Appellant did not object to Clipper's testimony on Confrontation-Clause grounds until after Clipper testified and the trial judge ruled on

17

appellant's hearsay and Rule 602 objections.[5]   We conclude that appellant did not preserve error because he did not timely object to Clipper's testimony on Confrontation-Clause grounds.  *See Zorn*, 315 S.W.3d at 625–26; *Hall*, 303 S.W.3d at 341.  We overrule appellant's third issue.

## V. RULE 602

By his fourth issue, appellant argues that the court erred by overruling his objections that Clipper did not have personal knowledge to testify that appellant shot Reyes and that the shooting of Reyes was intentionally done.  *See* TEX. R. EVID. 602.  We do not need to address this issue because when the trial court erroneously overruled a Rule 602 objection, appellate courts review the record for harmless error under rule 44.2(b).  TEX. R. APP. P. 44.2(b); *see Lewis v. State*, 402 S.W.3d 852, 865 (Tex. App.— Amarillo 2013), *aff'd on other grounds,* 428 S.W.3d 860 (Tex. Crim. App. 2014).  Because we have already concluded under that standard that admitting the objected-to portions of Clipper's testimony was harmless, we will not discuss this issue further.  *See* TEX. R. APP. P. 47.1.

## VI. DOUBLE JEOPARDY

By his fifth issue, appellant argues that his convictions on both counts violate the state and federal prohibitions against double jeopardy.  We agree.

### A.  Applicable Law

---

[5] A violation of the Confrontation Clause is not structural error and may be waived.  *Dewberry v. State*, 4 S.W.3d 735, 752 & n. 16 (Tex. Crim. App. 1999).  It is well settled that an objection on hearsay grounds does not preserve a Confrontation-Clause objection, *see Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005), and appellant does not argue that a Rule 602 objection also preserves a Confrontation-Clause objection.

The Double Jeopardy Clause provides three distinct protections: "First, protection against a second prosecution for the same offense after acquittal. Second, protection against a second prosecution for the same offense after conviction. Third, protection against multiple punishments for the same offense." *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008). Appellant's issue implicates the multiple-punishments protection, which is applicable in two separate contexts: if one offense is a lesser-included offense of the other, or if the two offenses are contained in separate statutory provisions but the Legislature has made it clear it only intended to impose one punishment. *Littrell v. State*, 271 S.W.3d 273, 276 (Tex. Crim. App. 2008).

Courts first analyze whether the two offenses are the same under the *Blockburger* test. *Bigon*, 252 S.W.3d at 370 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "Under the *Blockburger* test, two offenses are not the same if one requires proof of an element that the other does not." *Id.* If the offenses are not the same under *Blockburger*, the cognate-pleadings approach adopted by the Texas Court of Criminal Appeals permits a defendant to still make a double jeopardy claim if the indictment alleges the same "facts required" for both offenses. *Id.* We determine whether two offenses have the same "facts required" as a matter of state law by comparing the elements of the greater and lesser offenses as alleged by the State in the indictment. *Littrell*, 271 S.W.3d at 276 (citing *Hall v. State*, 225 S.W.3d 525, 525 (Tex. Crim. App. 2007)). If one offense is a lesser-included offense of the other under this analysis, the offenses are the "same" for double-jeopardy purposes and the defendant may not be punished for both. *Id.*

**B. Discussion**

This Court decided in a previous case that punishing a person for the offense of capital murder with the underlying offense of kidnapping and for a separate count of aggravated kidnapping violates the Double Jeopardy Clause because the kidnapping had the same "facts required" as capital murder with the underlying offense of kidnapping. *January v. State*, 695 S.W.2d 215, 223 (Tex. App.—Corpus Christi 1985), *holding adopted by per curiam order,* 732 S.W.2d 632 (Tex. Crim. App. 1987) (per curiam); *see Ex parte Hawkins*, 6 S.W.3d 554, 557 (Tex. Crim. App. 1999) (discussing the double-jeopardy reasoning of *January* with approval). The State agrees that *January* controls this case. We also conclude that *January* remains good law and that appellant's convictions are the "same" for double-jeopardy purposes. *See January*, 695 S.W.2d at 223; *see also Ex parte Hawkins*, 6 S.W.3d at 557.

The State argues that we should nevertheless overrule appellant's issue because he requested the incorrect relief. Appellant requested in his brief that we either dismiss Count I or remand the entire case for a new trial where the State would elect the count on which it would proceed. When a person has been convicted of two offenses that are the "same" for double-jeopardy purposes, the proper remedy is to retain the "most serious" conviction and set aside the other. *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). If the defendant received two sentences of different lengths, the "most serious" conviction is the offense for which the defendant received the greatest sentence. *Ex Parte Denton*, 399 S.W.3d 540, 547 (Tex. Crim. App. 2013). Appellant has presented no contrary authority showing that he is entitled to receive another type of relief.[6]

---

[6] This Court decided recently that in the rare case in which the length of the sentence and all other factors for determining which conviction is the most serious are equal, the case should be abated for the

The State's argument that we should not grant relief that appellant did not request might have force in a civil case,[7] but we have the authority to address unassigned error in criminal cases over which we have jurisdiction. *See Bigon*, 252 S.W.3d at 369; *Pena v. State*, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006). Moreover, the Texas Rules of Appellate Procedure grant this Court the authority to modify the judgment. TEX. R. APP. P. 43.2(b). We may modify the judgment at the request of either party or act *sua sponte*, and we may have a duty to do so. *Woods v. State*, 398 S.W.3d 396, 406 (Tex. App.—Texarkana 2013, pet. ref'd). Our authority to reform the judgment is not limited to mistakes only of a clerical nature. *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc) (construing the predecessor rule to Rule 43.2(b)).

In light of the State's concession that the convictions in this case violate the state and federal protections against double jeopardy, we will modify the judgment. *See Ex parte Cavazos*, 203 S.W.3d at 337. We set aside appellant's conviction and fifty-year sentence on Count II and retain the conviction and sentence of life imprisonment without parole on Count I. TEX. R. APP. P. 43.2(b); *see Lewis*, 402 S.W.3d at 867 (reforming the defendant's sentence of life without the possibility of parole where the State admitted the sentence was unconstitutional and because there was sufficient evidence in the record to show that the defendant was indeed a minor at the time of the offense). We sustain appellant's fifth issue.

## VII. JURY INSTRUCTION ON LESSER-INCLUDED OFFENSE

---

prosecutor to elect which conviction to retain. *See Almaguer v. State*, No. 13-12-00605-CR, ___ S.W.3d ____, 2014 WL 5088386, at *6 (Tex. App.—Corpus Christi Oct. 9, 2014, pet. ref'd).

[7] *See Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 14 (Tex. App.—Texarkana 2011, pet. denied) ("A court should not grant relief which has not been requested by the prevailing party.").

Appellant argues in his sixth issue that the trial court erred when it refused his requested jury instruction on the lesser-included offense of felony murder.

## A. Applicable Law

A defendant is entitled to a jury instruction on a lesser-included offense if: (1) the lesser-included offense is included within the proof necessary to establish the charged offense; (2) there is some evidence in the record that if the defendant is guilty, he is guilty only of the lesser-included offense. *Young v. State*, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009); *see Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). The second prong requires the existence of evidence "from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *Feldman v. State*, 71 S.W.3d 738, 750–51 (Tex. Crim. App. 2002). Anything more than a scintilla of such evidence is sufficient. *Goad*, 354 S.W.3d at 446. We may not consider the credibility of the evidence or whether it conflicts with or is controverted by other evidence. *Young*, 283 S.W.3d at 875.

## B. Discussion

We agree with appellant and the State that the first prong is met because the Texas Court of Criminal Appeals has decided that felony murder is a lesser-included offense of capital murder with an underlying felony. *See Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999) (concluding that felony murder is a lesser-included offense of capital murder with an underlying felony offense). Appellant asserts that the second prong is met because there is no evidence that he had the intention to murder or aid the murder of Reyes. Appellant reasons that the evidence shows only that he committed the

22

kidnapping, an act clearly dangerous to human life that resulted in the death of Reyes. We disagree.

The difference between felony murder and capital murder is the culpable mental state; capital murder requires "the existence of an intentional cause of death," while in felony murder, the culpable mental state is supplied by the underlying felony. *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005) (internal quotations omitted). Thus, the critical question is whether there was evidence that would permit a reasonable jury to conclude that appellant, whether as the actor or as a party, did not intend to kill Reyes but was responsible for an act clearly dangerous to human life that resulted in Reyes's death. *See id.* at 742. However, the only evidence in the record of an act clearly dangerous to human life that resulted in Reyes's death was shooting the restrained Reyes in the back of the head shortly after abducting him, evidence of an intentional killing. *See id.* (concluding that a felony-murder instruction was not warranted because shooting the decedent in the head at close range was more than an act clearly dangerous to human life). Appellant argues that the act of kidnapping was itself an act dangerous to human life, but felony murder requires both (1) the commission or attempt to commit a felony other than manslaughter and (2) the commission or attempt to commit an act clearly dangerous to human life in "the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt" of that felony. TEX. PENAL CODE ANN. § 19.02(b)(3) (West, Westlaw through 2013 3d C.S.). To convict a defendant of felony murder, it is not enough to prove the underlying felony alone, s*ee id.*, but appellant has not identified any evidence of act clearly dangerous to human life other than the underlying felony of kidnapping. Our review of the record has not revealed even some

23

evidence of an act clearly dangerous to human life other than the shooting of Reyes in the head, which is evidence of an intentional killing. *See Salinas*, 163 S.W.3d at 742. Because appellant has not identified any evidence from which a reasonable jury could acquit him of capital murder but convict him of felony murder, the trial court did not err in refusing his requested instruction. *See Mohammed v. State*, 127 S.W.3d 163, 167 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that the trial court did not err in refusing to give an instruction when the evidence showed that the defendant was either guilty of capital murder or innocent of both capital murder and felony murder because he would have had no awareness of the act that resulted in the decedent's death). We overrule appellant's sixth issue.

## VIII. CONCLUSION

We vacate the aggravated kidnapping conviction on double jeopardy grounds. We affirm as modified.

/s/ Nora L. Longoria
NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of April, 2015.